UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| KENNETH L. WILEY, M.D. | 04-13927 |
| Debtor | Chapter 11 |

MEMORANDUM OPINION

This matter came before the court on June 2, 2004 as a hearing on the motion of Kenneth L. Wiley, M.D. ("Dr. Wiley" or "debtor") to enforce the automatic stay against Tammi Tucker ("Tucker") and Doctor Care II, LLC ("defendants"), and on the opposition filed by the defendants. For the reasons expressed in the following memorandum opinion, the court finds that for the most part the contempt proceedings at issue are civil in nature, and therefore, the state court order and attachment issued on May 25, 2004 are stayed.

　　**1. Background**.

　　　　**A. Relationship of the parties**.

　　To determine whether the stay issued automatically upon the filing of a

bankruptcy proceeding[1] prevents contempt proceedings in a state court against the debtor depends upon whether the contempt is civil or criminal in nature. That determination is not an easy one because it requires the court to look at all the facts and circumstances to determine the purpose of the order. For that reason the Court had the parties obtain and file the transcript of the entire state court proceedings. This motion is a continuation of pre-petition litigation initiated by Tucker and Doctor Care II, LLC against the debtor, stemming from a sale of assets of a medical corporation owned by Dr. Wiley. On July 8, 2003, Dr. Wiley, individually and on behalf of Doctor Care, LLC. ("Doc I"), entered into an agreement to sell the assets of Doc I to a newly formed entity called Doctor Care II, LLC ("Doc II"), for an agreed upon price of $30,000. A Management Agreement was also signed, whereby Dr. Wiley was to act as medical director for Doc II, for an agreed upon compensation of $20,000 per month.

**B. State court proceedings**.

On January 13, 2004, Tucker and Doc II filed in the Civil District Court for the Parish of Orleans, State of Louisiana, a petition for breach of contract, conversion, defamation, damages, temporary restraining order and preliminary injunction. In short, the petition alleges that Dr. Wiley failed to perform under the

---

[1] 11 U.S.C. 362(a).

purchase agreement, by denying access to purchasers to the facility, transferring patient checks belonging to Doc II to another company started by Dr. Wiley, and attempting to transfer third party Medicaid recovery checks to his son.[2]

The duty judge of the trial court set a hearing on the request for a TRO later that day on January 13, 2004 at 1:30. The debtor was given approximately one hour's notice of the emergency hearing.[3] At the hearing, a TRO was granted and a restraining order was ordered to be issued upon petitioners' furnishing $1,000 as security for ten days enjoining Dr. Wiley and Doc I from "interfering in any manner with the business operations of petitioners."[4] A hearing on the preliminary injunction was set for January 21, 2004 at 10:00 a.m. This hearing and the TRO were continued at the debtor's request to permit the enrollment of counsel. After a hearing on February 12, 2004, the district court entered a judgment granting the motion for preliminary injunction enjoining Dr. Wiley and Doc I from:

---

[2] Doc II and Dr. Wiley answered the petition, denying its allegations and filed a counter claim alleging that Tucker and Doc II were in breach of the purchase agreement, and that the agreement was null and void. Among other things, the counter claimants alleged that the purchasers failed to pay Dr. Wiley's monthly compensation, failed to employ Doc I's employees, failed to assume liability for goods, supplies, and insurance policies, failed to obtain a release of a tax lien in the amount of $600,000, and other breaches.

[3] Attorney's Certificate dated January 13, 2004.

[4] This order signed by Judge Nadine Ramsey restrained both Dr. Wiley and Doc II, but the restraining order (evidently a printed form issued over the signature of the deputy clerk of court) restrains only Dr. Wiley.

> "1. Disposing of any of the assets of Doctors Care LLC sold to petitioners on July 8, 2003;
> 2. Changing or attempting to change the third party Medicaid provider numbers;
> 3. Altering or misusing the provider numbers;
> 4. Transferring any of the patient base assigned to Medicaid members of Doctor Care, LLC and Doctor Care II, LLC; and
> 5. Negotiating and/or otherwise cashing or attempting to cash any State provider checks."[5]

The record from the trial court reflects that several notices of deposition were issued in connection with the proceedings, including depositions of Dr. Wiley set for February 10, 2004, March 12, 2004, and April 28, 2004. On April 7, 2004, Tucker and Doc II filed two motions:

1. Motion to Compel Dr. Wiley's appearance at a formal deposition. A show cause order on the Motion to Compel was scheduled to take place on May 21, 2004 at 9:00 at which Dr. Wiley was to show cause why he should not be required to appear for an oral deposition within 30 days of the May 21, 2004 hearing date.[6]

2. Motion for Contempt alleging that Dr. Wiley had continued to transfer patients and receive payments under a different provider number in violation

---

[5] Judgment dated February 12, 2004. Both the TRO and the Preliminary Injunction were signed by Judge Nadine M. Ramsey.

[6] Order dated April 14, 2004.

of the Preliminary Injunction. This motion was also scheduled to be heard on May 21.

Evidently, Dr. Wiley and Doc II did not appear at the May 21, 2004 hearing except though counsel. The court evidently issued an oral order that is contained in a Judgment signed May 25, 2004 ("May 25 Judgment"). The May 25 Judgment recites that a hearing was held on May 21 on the motion for contempt and motion to compel discovery, and: (1) Dr. Wiley was ordered to appear on May 25, 2004 at 9:00 a.m. to show cause why he should not be held in contempt ; and (2) ordered to appear on May 25, 2004 at 9:00 a.m. to give a deposition at the conclusion of the contempt and sanction hearing. The debtor and Doctor Care, LLC filed a bankruptcy petition for Chapter 11 relief on May 25, 2004 at 8:51 a.m.

The second state court order signed May 25, 2004 ("May 25 Order") found Dr. Wiley and Doc I:

". . . in contempt of the following Court Orders and for failure to appear:

1. Temporary Restraining Order dated January 13, 2004
2. Preliminary Injunction dated February 12, 2004;
3. Court Order verbally rendered in open court on May 21, 2004 and executed [sic] on May 25, 2004.
    Dr. Kenneth Wiley, M.D. is further held in contempt for his failure to appear for the Contempt Hearing conducted May 25, 2004."[7]

---

[7] Both the May 25 Judgment and May 25 Order were signed by Judge DiRosa.

In connection with the contempt order, an attachment was issued to attach the body of Dr. Wiley to have him before the state court on May 28, 2004 to answer for a contempt in neglecting or refusing to attend the May 25, 2004 hearing and for incarceration.[8]

### C. Bankruptcy proceedings.

Dr. Wiley and Doc I filed a motion in the bankruptcy court seeking to enforce the automatic stay, asserting that the contempt citation and writ of arrest were issued in violation of the automatic stay and requesting that the bankruptcy court vacate the May 25 Order and the writ of attachment rendered on May 25, after the filing of the bankruptcy petition.[9] The debtor contends that the May 25 Order for contempt issued by the state court is a civil contempt which is subject to the automatic stay, and is voidable. The state court judge felt that the contempt was criminal[10] but nevertheless the sanctions he imposed could have been discharged by the debtor without paying a sum certain or being incarcerated for a set term. The defendant's brief to this court takes the unique position that a *civil*

---

[8] Evidently, there is no contempt order for failure of debtor to attend the May 21, 2004 hearing before Judge DiRosa.

[9] The debtor has withdrawn the request for sanctions also prayed for in the Motion to Stay.

[10] Transcript, May 25, 2004, pg. 4, lines 11 - 18.

contempt proceeding, i.e., contempt of a court injunction involving medicare/medicade fraud, is not subject to the automatic bankruptcy stay. [11]

**2. Applicable law.**

Generally, the automatic stay of §362 stays the commencement or continuation of all prior filed state or federal actions against the debtor or actions that seek to recover a claim that arose prior to the filing of the bankruptcy petition, and the enforcement of judgments arising from such claims.[12] Certain exceptions exist to the reach of the automatic stay, among them that criminal actions, including criminal contempt proceedings, are not subject to the automatic stay.[13] Courts generally construe actions for civil contempt, however, as subject to the stay,[14] reasoning that the automatic stay found in §362(a) applies unless a specific

---

[11] Pl. 11, Opposition to Debtor's Motion to Enforce Stay, pg. 2, para. IV.

[12] 11 U.S.C. 362(a).

[13] *In re Maloney*, 204 B.R. 671, 674 (Bankr. E.D.N.Y. 1996); *In re Atkins*, 176 B.R. 998, 1005 (Bankr..D. Minn. 1994).

[14] *E.g.*, *Maloney*, 204 B.R. at 674 (Bankr. E.D.N.Y. 1996)("courts consistently have held that civil contempt orders fall within the scope of the automatic stay under section 362(a) of the Bankruptcy Code, but that criminal contempt orders do not."); *Atkins*, 176 B.R. at 1005; *In re Newman*, 196 B.R. 700, 704 (Bankr. S.D.N.Y. 1996)("actions for civil contempt are considered private collection devices and within the ambit of the automatic stay."), *citing In re Kearns*, 168 B.R. 423 (D. Kan. 1994).

exception of §362(b) is applicable.[15] Because civil contempt is not among the exceptions found in §362(b), actions for civil contempt are stayed.[16] Instead, "actions for civil contempt are considered private collection devices and are within [the] ambit of the automatic stay."[17]

Other courts do not look to the civil or criminal nature of the state court proceedings in determining whether a stay violation has occurred. Instead they look to the circumstances surrounding the issuance of the order to determine whether the order was intended to enforce compliance with a court order, which would be stayed, or sought to uphold the dignity of the court or for punitive reasons, which would not be stayed.[18] A bright line test does not exist to "differentiate an acceptable punitive contempt order from an unacceptable coercive contempt order."[19] Instead, the court looks at all of the facts and circumstances surrounding the order.[20]

---

[15] *Atkins*, 176 B.R. at 1006.

[16] *Id.*

[17] *In re Newman,* 196 B.R. 700, 704 (Bankr. SDNY 1996).

[18] *In re Moon*, 201 B.R. 79 (Bankr. S.D.N.Y. 1996), *rev'd,* 211 B.R. 483 (S.D.N.Y. 1997)(and cases cited therein).

[19] *In re Dill*, 300 B.R. 658, 667 (Bankr. E.D. Va. 2003).

[20] *International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-828 (1994)(conclusions regarding the civil or criminal nature of a contempt sanction are drawn from

Contempt proceedings are classified as either civil or criminal, depending on their primary purpose.[21] Orders whose purpose is to coerce compliance with a court order or to compensate another party for the contemnor's violation are considered to be civil contempt.[22] Stated another way, civil contempt operates to vindicate the private rights of a party to litigation.[23] The penalty assessed under a civil contempt order is meant to compensate the party or to coerce compliance with a court order for the other party's benefit.[24] Orders which permit the debtor to avoid punishment by complying with the court's directive are considered to be civil contempt orders.[25]

Where the order's purpose is to punish a party or to vindicate the authority of the court, it is viewed as criminal contempt.[26] Criminal contempt orders are

---

an examination of the character of the relief itself).

[21] *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 565 (5th Cir. 1990).

[22] *In re Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 612 (5th Cir. 1997); *City of Broussard v. Watkins*, 869 So.2d 962 (La. App. 3rd Cir. 2004).

[23] *In re Maloney,* 204 B.R. 671, 674 (Bankr. E.D. N.Y. 1996); *In re Dill*, 300 B.R. 658 (Bankr. E.D. Va. 2003).

[24] *Id. citing In re Newman*, 196 B.R. at 703.

[25] *Johnson & Placke v. Norris*, 874 So.2d 340 (La. App. 2nd Cir. 2004)(*citing International Union*, 512 U.S. 821, 828 (1994)); *In re Moon*, 201 B.R. 79, 84 (Bankr. S.D. N.Y. 1996), *rev'd,* 211 B.R. 483 (S.D.N.Y. 1997).

[26] *Terrebonne,* 108 F.3d at 612.

intended to sanction offenses against public justice and to compel respect for court orders.[27] Orders which incarcerate a party for a definite period of time, or which imposes a penalty without the opportunity to comply and cure the offense do not redress a private right and are considered criminal contempt orders.[28] A key determinant of whether an order constitutes civil or criminal contempt is whether the penalty imposed is absolute or conditional on the contemnor's conduct.[29]

Under Fifth Circuit jurisprudence:

> [c]ivil contempt is remedial; the penalty serves to enforce compliance with a court order or to compensate an injured party. Criminal contempt is punitive; the penalty serves to vindicate the authority of the court and does not terminate upon compliance with a court order.[30]

The May 25 Order found Dr. Wiley and Doc I in contempt, as follows:

1. violation of the Temporary Restraining Order dated January 13, 2004
2. violation of the Preliminary Injunction dated February 12, 2004;
3. violation of the court order verbally rendered in open court on May 21, 2004 and executed on May 25, 2004, and

---

[27] *Maloney*, 204 B.R. at 674.

[28] *Id.*

[29] *Lamar Fin.*, 918 F.2d at 566.

[30] *In re Stewart*, 571 F.2d 958, 963 (5th Cir. 1978); *see also Lamar Fin. Corp. v. Adams,* 918 F.2d 564, 566 (5th Cir. 1990).

    4.   Dr. Wiley for his failure to appear for the Contempt Hearing conducted May 25, 2004.[31]

Each cited act of contempt is a civil contempt or one intended to enforce compliance with a court order, rather than to punish, and therefore is subject to the automatic stay. The order of contempt sought to coerce future compliance with prior court orders. Additionally, the debtor could purge himself of the contempt , at least as it relates to the deposition, by appearing at the court hearing scheduled on May 25, and submitting to a deposition at that time. The contempt action was initiated by a private party, and not the state or other government authority, to coerce the debtor's compliance with discovery, and to coerce compliance with prior court orders. The contempt is remedial and entered for the benefit of the complainants. The discovery and the TRO were initiated by the plaintiffs to aid in a claim for damages arising from the sale of the debtor's practice.

Additionally, the debtor could not be in contempt on May 21, the time the hearing was first held, for failure to appear on May 25. On May 25, the debtor's counsel appeared, however, the debtor did not because he had filed for bankruptcy earlier that day, and arguably the automatic stay was in effect.

The attachment issued by the state court indicates that the contempt is a civil

---

[31] Both the May 25 Judgment and May 25 Order were signed by Judge DiRosa.

contempt and thus it is stayed. The attachment orders the body of the debtor to be attached "so that you have him before our said Court, Division J, Section 13 of Civil District Court for the Parish of Orleans at 9:00 a.m. on May 28, 2004 - Incarcerated    to answer for a contempt in neglecting or refusing to attend before the same as a 'Defendant.'"[32] The attachment issued after the bankruptcy was filed, orders debtor's body brought before the state court some four days after the bankruptcy filing to answer for contempt for not attending a hearing on the same day, May 25, in the state court after the bankruptcy filing. The attachment does not set out any term for Mr. Wiley's incarceration. Instead, it states that the attachment is for the purpose of having him before the court on May 28, 2004.

The trial transcript from the May 25, 2004 hearing in the state court indicates that the attachment was signed to compel attendance at a deposition,[33] and implies that once Dr. Wiley was deposed, the attachment was satisfied. The trial judge states:

> "Go upstairs to get a copy of order to incarcerate until the deposition is taken and I'll sign it."[34]

---

[32] Attachment, May 25, 2004.

[33] The show cause order of April 14, 2004 entered in connection with Tucker and Doc II's motion to compel, originally provided that Dr. Wiley was to show cause why he should not be required to appear for an oral deposition within 30 days of the May 21, 2004 hearing date.

[34] Transcript, May 25, 2004, pg. 18, lines 1-3.

. . .

"That may be about the facts of the case but they have formerly asked for his deposition. He has not appeared. That, in my opinion is contempt of court. If you will go upstairs and get the order, I will incarcerate him until the deposition is taken."[35]

The transcript recites that, later in the proceeding, the trial judge found debtor in contempt for violating the terms of the injunction, by transferring patients from Doc I to a third party.[36] Later he states:

"I'm here today and I have found him in contempt for two things that apply, as far as I'm concerned: One is contempt for the deposition; one is contempt for violation of the restraining order. Criminal matters as far as I'm concerned, both of them. If you will go upstairs we will sign the order to incarcerate him until such time as he purges himself of contempt."[37]

The transcript concludes "You can tell him if he wants to purge him for contempt he better hurry up and do it."[38]

The transcript makes clear that, while the court referred to the contempt as a criminal contempt, the debtor was clearly permitted to purge himself of the attachment and contempt by complying with the court's order and appearing for a

---

[35] *Id.*, pg. 21, lines 2-9.

[36] *Id.*, pg. 23.

[37] *Id.*, pg. 24, lines 11-18.

[38] *Id.*, pg. 26, lines 12-13.

deposition. Case law provides that a contempt is determined to be civil or criminal, not by how the order is denominated by the issuing court, but instead by examining the provisions of the order and the surrounding circumstances. [39] Both the attachment issued in conjunction with the contempt order and the trial transcript indicate the debtor could mitigate or avoid punishment by taking corrective action intended to vindicate the rights of the party requesting the action. The order is geared more toward the discovery and ultimate recovery of Tucker and Doc II's claims, rather than as a punitive measure to sanction the debtor for offenses against public justice or to compel respect for court orders. This is thus clearly a civil contempt subject to the automatic stay. The court finds that, considering the contempt order and all the facts and circumstances surrounding the contempt, the contempt is a civil contempt that is subject to the provisions of the automatic stay. As such, the May 25, 2004 orders and attachment are stayed pursuant to the provisions of 11 U.S.C. §362.

As to the motion now before the court, it is clear that the contempt order is a civil contempt and the automatic stay order prohibits the defendants from going forward with it. It is clear to this court that both the May 25 Order, Judgment and the attachment are attempts to vindicate the rights of Tucker and Doc II and that

---

[39] *In re Maloney*, 204 B.R. 671, 674 (Bankr. E.D. N.Y. 1996).

the failure of the debtor to attend either the May 25 or May 28 hearings, as ordered by the state court judge, is a civil and not a criminal contempt.

It is possible that failure to attend the May 21 hearing (four days before the bankruptcy filing) could be criminal contempt if the debtors were properly notified of the exact criminal contempt charges, an opportunity to be heard was given and all of the other requirements of criminal contempt were met.[40] This court does not have to decide that question now because: (a) it does not appear from the record now before this court that the basis of the contempt imposed by the state court judge, though enumerating several reasons, was failure to attend the May 21 hearing and (b) whether the debtor's appearance through counsel at the May 21 hearing was sufficient to avoid imposition of criminal contempt is a question for the state court.

The debtor also initially asked for sanctions against the defendants for violating the automatic stay. To the extent that debtor's motion for sanctions has not been withdrawn, the court denies sanctions. Section 362(h) provides that an individual injured by a willful violation of the stay shall recover actual damages, including costs and attorneys fees, and punitive damages in an appropriate case.

---

[40] *See generally Johnson & Placke, v. Norris*, 874 So.2d 340 (La. App. 2nd Cir. 2004); *see also Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990)(for criminal contempt, contemnor must be given explicit notice that proceedings are of a criminal nature).

In order for a willful violation to occur, the court must determine that a violation occurred, the individual seeking damages was injured and the violation was willful.[41] A willful violation occurs when a creditor acts deliberately with knowledge of the pending bankruptcy.[42] In this case, a willful violation of the stay has not occurred. The debtor's bankruptcy petition was filed on the morning of an already scheduled hearing on a motion for contempt. The state court judge in the case, upon hearing of the filing, expressed his belief that the contempt matter was criminal and not subject to the stay. Creditors in this matter did little more than continue to argue in favor of their motion, after learning either at the hearing or shortly before that a bankruptcy petition had been filed by Dr. Wiley. Debtor has not suffered an injury, and the matter of the contempt was brought to the attention of this court within days of the issuance of the contempt order. It cannot be said that the debtor has been harmed by the actions of the creditors, and the court finds that the creditors actions were not sufficiently willful to warrant a finding of a stay violation under §362(h).

For the foregoing reasons, the court will enter an order finding the May 25,

---

[41] *Lovett v. Honeywell*, 930 F.2d 625, 628 (8th Cir. 1991).

[42] *In re Knaus*, 889 F.2d 773 (8th Cir. 1989); *In re Lile*, 103 B.R. 830 (Bankr. S.D. Tex. 1984).

2004 order of the state court to be subject to the provisions of the automatic stay. The contempt order and attachment are stayed. An appropriate order will be entered.

      New Orleans, Louisiana, August 30, 2004.

                                        */s/ J. A. Brown*
                                        Jerry A. Brown
                                        U.S. Bankruptcy Judge